## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**AMERICAN SAFETY CASUALTY**
**INSURANCE COMPANY,**

        **Plaintiff,**

**v.**                                  **Case No. 8:06-cv-237-T-17TBM**

**ROBERT CHARLES ENTERPRISES,**
**INC., ROBERT C. STIVALA and**
**PASCALE STIVALA,**

        **Defendants.**

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the court for a report and recommendation on **Plaintiff's Motion for Prevailing Party Attorneys' Fees and Costs** (Doc. 55), as supplemented (Doc. 58). Defendants, Robert C. Stivala and Pascale Stivala (collectively "Defendants" or the "Stivalas") have failed to respond to the motion.[1] Plaintiff seeks an award of $31,290.00 in fees and $1,347.64 in costs as the prevailing party in this action.

### I.

A brief recounting of the allegations and course of proceedings is useful. As set forth in the Complaint, Plaintiff (as surety), RCE (as principal), and the Stivalas (as

_____

[1]Robert Charles Enterprises, Inc. ("RCE") never was formally brought into this action. By a suggestion of bankruptcy, this court was notified that RCE filed a voluntary petition for bankruptcy in the District of New Jersey on July 29, 2005. *See* (Doc. 9). As Plaintiff later advised, RCE had not been served with process in this suit and the automatic stay provisions of bankruptcy have no bearing on the claims against the Stivalas as individuals. (Doc. 15).

indemnitors), entered into a General Agreement of Indemnity ("Indemnity Agreement") on or about August 25, 2003.  In pertinent part, the indemnity provision in the Indemnity Agreement stated:

> The PRINCIPAL and INDEMNITORS, jointly and severally, shall exonerate, hold harmless, indemnify and keep indemnified the SURETY from and against any and all claims, demands, liability, losses, costs, and expenses of whatsoever kind or nature, including court costs, attorneys' fees, adjusting costs and investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain, suffer or incur; (i) By reason of having executed or procured the execution of BONDS; (ii) By reason of the failure of the PRINCIPAL or INDEMNITORS to perform or comply with any of the covenants or conditions of this Agreement, including but not limited to the payments of all premiums due for BONDS; (iii) In enforcing any of the covenants, obligations or conditions of this Agreement; (iv) In making any investigation, obtaining or attempting to obtain a release under or exoneration of a BOND; (v) In prosecuting or defending any action or claim in connection with any BOND, whether SURETY at its sole option elects to employ its own counsel, or permits or requires PRINCIPAL and INDEMNITORS to make arrangements for the SURETY'S legal representation; (vi) By reason of the occurrence of any Event of Default by PRINCIPAL or any INDEMNITOR; (vii) As a result of liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to the PRINCIPAL'S non-performance of an obligation, CONTRACT, or any other matter under or covered by a BOND; (viii) As a result of liability incurred or expenses paid in connection with claims, suits or judgments relating to an obligation, CONTRACT, or a BOND, including, without limitations, attorney's fees and all legal expenses, including in-house attorney's fees, adjusting fees or investigative fees, and all fees and costs for investigation, accounting, adjusting, engineering or other professional services related to the adjustment of claims and losses deemed necessary of appropriate in the sole discretion of the SURETY.

(Doc. 1 at 16).

In reliance on the Indemnity Agreement, Plaintiff issued surety bonds on behalf of RCE.  Thereafter, Plaintiff received notice of claims and potential claims on certain of the surety bonds issued on behalf of RCE in relation to the failure to perform work or failure to pay.  In June 2005, Plaintiff made demand on the Stivalas to exonerate, reimburse, and

2

indemnify it in connection with these claims, including its related legal fees, consulting fees, costs, and expenses.  Plaintiff also demanded that the indemnitors provide adequate collateral security to reimburse a reserve established on certain of the claims.  The Stivalas failed and refused to provide the required collateral or to otherwise reimburse, exonerate, or indemnify Plaintiff.  Plaintiff brought suit against the Stivalas in February 2006, alleging that the Stivalas breached the Indemnity Agreement and their contractual and common law duty to exonerate it.  In addition to damages estimated at $750,000, Plaintiff sought attorneys' fees and costs.  *See* (Doc. 1).  The Stivalas answered the Complaint on March 29, 2006.[2]  (Doc 17).

In December 2007, Plaintiff filed a motion to compel related to its first set of interrogatories and first and second requests for production.  (Doc. 40).  A hearing on the motion was conducted on December 28, 2007.  By Order dated January 11, 2008, the court granted Plaintiff's motion in part – Defendants were ordered to file sworn responses to Plaintiff's first set of interrogatories, locate, examine, and identify all documents in their possession, custody, or control upon which they relied to prove any and all defenses to the action or were otherwise responsive to Plaintiff's request to produce, and to contact Plaintiff's counsel to arrange for the production of the same.  In all other aspects, including the request for sanctions, the motion was denied without prejudice.  Nonetheless, the Defendants were advised that the "failure to comply with this order will result in the imposition of sanctions by the court." (Doc. 42).  On February 1, 2008, Plaintiff filed a motion for contempt of court and for sanctions against the Stivalas.  (Doc. 46).  By the motion, Plaintiff set forth its failed

---

[2]The Stivalas initially were represented by counsel.  However, counsel was permitted to withdraw in June 2007.  (Doc. 34).  The Stivalas have proceeded *pro se* since then.

efforts at discovery in this cause and recounted the court's order of January 11, 2008, directing the Stivalas' compliance with outstanding interrogatories and requests for production.  By its allegations, the Stivalas continued to fail or refuse to comply with the federal rules related to discovery as well as the court's Order.  By its supplement (Doc. 48), Plaintiff attached a letter purporting to be Mr. Stivala's unsigned, unsworn responses to the outstanding interrogatories.  Beyond this letter, the Stivalas provided no further responses to outstanding discovery.

On February 21, 2008, the court directed the Stivalas to show cause why the relief requested by the motion for contempt should not be granted.  The order advised that "the failure to file responses may result in the entry of an adverse judgment, or some other sanction." (Doc. 50).  Thereafter, on April 2, 2008, the district court found that the Stivalas had abandoned the defense of this cause and struck their answer and affirmative defenses. (Doc. 52).  The court also revisited Plaintiff's motion summary judgment, which earlier had been denied without prejudice, noting the particular relief sought.  The court then determined to enter default judgment in favor of the Plaintiff as against the Stivalas in the amount of $905,239.68 with interest, and a mandatory injunction requiring the Stivalas post such of their property as collateral as sufficient to exonerate the Plaintiff from pending or potential bond claims in the amount of $771,937.68.  *See id.*  The court reserved ruling on the matter of fees and costs.  On April 2, 2008, final default judgment was entered in favor of Plaintiff as against the Stivalas in conformance with the court's Order.  (Doc. 53).  Thereafter, Plaintiff timely filed its motion for attorneys' fees and costs (Doc. 55).  On direction from the court, Plaintiff supplemented the motion with an itemization of fees and costs.  (Docs. 57, 58).

II.

A.

By its instant motion (Doc. 5), Plaintiff seeks fees totaling $31,290.00. A review of Plaintiff's supplement identifies 23.9 hours of attorney work billed at $150.00 per hours, 20 hours of paralegal work billed at $100.00 hour, and 146.2 hours of attorney work billed at $175.00 per hour. By the court's calculation, the total itemized is $31,170.00.

Plaintiff claims entitlement to fees on the basis of the provisions in the Indemnity Agreement as set forth above. Although it appears that the agreement was entered into in New Jersey, it calls for "interpretation in accordance with the laws of the State of Delaware."[3] Under Delaware law, courts will enforce contractual provisions for payment of attorneys fees absent evidence of an ambiguity or contrary intent. *See L & W Ins., Inc. v. Harrington,* No. 2730-VCP, 2007 WL 1756540, *3 (Del. Ch. 2007); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992). In determining whether fees are reasonable under Delaware law, courts look to the factors delineated in Rule 1.5(a) of the Delaware Lawyers' Rules of

---

[3]Because the court's jurisdiction is based on diversity of citizenship, the court must apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001). This principle applies to a state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Shaps v. Provident Life & Accident Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001). Florida follows the *lex loci contractus* doctrine, which provides that, *in the absence of a contractual forum selection provision*, a contract (other than a contract for the performance of services) is governed by the law of the state in which the contract is made. *Shaps*, 244 F.3d at 881; *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995); *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974). Application of Delaware law does not appear contrary to public policy in Florida, whose law holds contractual provisions awarding attorney's fees to the prevailing party are generally enforced. *See Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004) (explaining that the only way to recover attorney fees and costs is if a statute authorizes it or a contract so provides). Moreover, courts do not have the discretion to decline to enforce such provisions. *See Lashkajani v. Lashkajani*, 911 So.2d 1154, 1158 (Fla. 2005) (citing *Brickell Bay Club Condo. Ass'n, Inc. v. Forte*, 397 So.2d 959, 960 (Fla. Dist. Ct. App. 1981)).

Professional Conduct.[4]  Here, the Stivalas, as indemnitors, agreed broadly to exonerate, hold

harmless and indemnify Plaintiff for "losses, costs, and expenses of whatsoever kind or

nature, including court costs, attorneys' fees, . . . and investigative costs" suffered by reason

of "(iii) [i]n enforcing any of the covenants, obligations or conditions of this Agreement; (iv)

[i]n making any investigation, obtaining or attempting to obtain a release under or

exoneration of a BOND; (v) [i]n prosecuting or defending any action or claim in connection

with any BOND, whether SURETY at its sole option elects to employ its own counsel, or

permits or requires PRINCIPAL and INDEMNITORS to make arrangements for the

SURETY'S legal representation; and (vi) [b]y reason of the occurrence of any Event of

Default by PRINCIPAL or any INDEMNITOR as set forth above."  (Doc. 1 at 16).  These

provisions clearly set forth the parties' intent in this matter.  Thus, I conclude that Plaintiff

has demonstrated a valid contractual right to fees in this cause.

## B.

Upon consideration of the applicable factors, I find Plaintiff is entitled to an award of

fees in the amount of $31,170.00.  The hourly rates requested by Plaintiff's counsel and the

---

[4]These are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skills requisite to perform the legal services properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.  Delaware case law provides that a court should also consider whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary. *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242, 247 (Del. 2007).

Case 8:06-cv-00237-EAK-TBM   Document 63   Filed 05/15/08   Page 7 of 9 PageID 405

paralegal are well within the range of reasonable fees for the type of work performed in this

matter.  As for the hours expended, on the whole, they appear reasonable as well.[5]

C.

Plaintiff also seeks $1,347.64 in costs.  A review of Plaintiff's billing statements

reveals costs as follows:

| | |
|---|---|
| Photocopies | $226.20 |
| Postage | $ 16.59 |
| Parking for court hearing | $ 23.50 |
| Service of Process | $446.50 |
| AT&T Conference call | $ 66.83 |
| PACER research | $ 17.76 |
| Express Mail | $146.45 |
| Clerk's Fees | $445.00 |

*See* (Doc. 58).  By the court's calculation, these itemizations total $1,388.83.

Rule 54(d) provides that costs other than attorney's fees "should be allowed to the

prevailing party" unless a federal statute, the federal rules, or court order provides otherwise.

Fed. R. Civ. P. 54(d)(1).  This rule creates a presumption in favor of awarding costs to the

prevailing party. *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296

(11th Cir. 2001) (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir.

1991)).  In awarding costs, federal courts are bound by the limitations set forth in 28 U.S.C.

§§ 1821 and 1920 unless there is explicit statutory or contractual authorization for the

taxation of such.[6]  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

---

[5]While the billing statements reflect a considerable effort related to the preparation and filing of the motion for TRO/preliminary injunction and in relation to the motion for summary judgment, the court is without any basis to question these hours or to otherwise determine that they are unreasonable, unnecessary or duplicative.

[6]Under 28 U.S.C. § 1920, the following costs may be taxed: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses;

7

Because the Plaintiff is this case is entitled to costs under the Indemnity Agreement, the court has greater discretion in awarding costs beyond the scope of 28 U.S.C. §§ 1821 and 1920. *See id.*; *United Food Mart, Inc. v. Motiva Enters.*, No. 04-60539CIV, 2006 WL 3068821, *2 (S.D. Fla. 2006). Nonetheless, it is within the court's discretion to deny a full award of costs if the court has and states a sound reason for doing so.[7] *See Chapman v. A.I. Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000). A district court's cost determination is reviewed for abuse of discretion. *Id.* In the usual course, consistent with case law under Rule 54 and 28 U.S.C. §§ 1821 and 1920, I do not grant costs for photocopying absent justification for the same. Nor do I approve express mailing absent justification or electronic research which is part of the firm's overhead and otherwise covered by the hourly billings. Here, the contractual agreement however is quite broad and appears clearly to allow for recovery of such expenses. Accordingly, I recommend that Plaintiff be awarded the full request for $1,347.64.

III.

Accordingly, for the aforesaid reasons, it is RECOMMENDED that the court GRANT **Plaintiff's Motion for Prevailing Party Attorneys' Fees and Costs** (Doc. 55) and

---

(4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under § 1923; and (6) compensation of court appointed experts and interpreter services. 28 U.S.C. § 1920; *Mathews v. Crosby*, 480 F.3d 1265, 1276-77 (11th Cir. 2007).

[7]The Eleventh Circuit has recognized that the "denial of costs is in the nature of a penalty for some defection on [the prevailing party's] part in the course of litigation." *Chapman*, 229 F.3d at 1039 (quoting *Walters v. Roadway Express, Inc.,* 557 F.2d 521, 526 (5th Cir. 1977)).

award Plaintiff attorney's fees in the amount of $31,170.00 and costs in the amount of $1,347.64 pursuant to the contractual provision in the Indemnity Agreement.

Respectfully submitted this
15th day of May 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record

9